IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:11-cv-03350-CMA-BNB

COLORADO CHRISTIAN UNIVERSITY,

     Plaintiff,

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services,
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN        SERVICES,

HILDA SOLIS, Secretary of the United States Department of Labor,
UNITED STATES DEPARTMENT OF LABOR,
TIMOTHY GEITHNER, Secretary of the United States Department of the Treasury, and
UNITED STATES DEPARTMENT OF THE TREASURY,

     Defendants.

---

## ~~JOINT PROPOSED~~ SCHEDULING ORDER

---

## 1. DATE OF CONFERENCE
### AND APPEARANCE OF COUNSEL AND PRO SE PARTIES

A Scheduling/Planning Conference in this matter is set for February 29, 2012, in Courtroom A-401 before Magistrate Judge Boyd N. Boland at 2:00 PM. Plaintiff Colorado Christian University is represented by the following counsel:

Eric Baxter
The Becket Fund for Religious Liberty
3000 K Street, NW, Ste. 221
Washington, DC 20007
(202) 349-7221

Defendants Secretary Kathleen Sebelius, United States Department of Health and Human

Services, Secretary Hilda Solis, United States Department of Labor, Secretary Timothy

Geithner, and United States Department of Treasury are represented by the following

counsel:

Michelle Bennett
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W., Rm. 7310
Washington, DC 20530
(202) 305-8902

## 2.  STATEMENT OF JURISDICTION

Plaintiff:

The University asserts that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

and 1361, because this action arises under the Constitution and laws of the United States. The

University has alleged facts sufficient to show that it will suffer a concrete and imminent injury

under the challenged regulation and that it is not eligible for "grandfathering" under the

regulation. The promises by some Defendants to amend the regulation are not legally binding

and would not resolve the regulation's constitutional defects.

Defendants:

Defendants assert that the Court lacks subject matter jurisdiction because plaintiff lacks standing

and its claims are not ripe.

First, plaintiff has not alleged a concrete and imminent injury resulting from the operation of the preventive services coverage regulations. The regulations do not apply to grandfathered plans (i.e., plans that were in existence on March 23, 2010 and that have not undergone any of a defined set of changes). Plaintiff alleges that it currently offers its employees a group health plan that does not cover contraceptive services that are inconsistent with plaintiff's faith, *see* Compl. ¶ 27-28, 76, and plaintiff does not allege that its plan is ineligible for grandfather status. Thus, the allegations in the Complaint do not show that plaintiff will be required by the challenged regulations to provide coverage for recommended contraceptive services to which plaintiff objects – as opposed to continuing to offer the same grandfathered plan that does not, and would not, cover such contraceptive services.

Second, even assuming *arguendo* that plaintiff's group health plan is ineligible for grandfather status, plaintiff cannot demonstrate an imminent injury that would support standing. On February 10, 2012, after plaintiff filed this action, defendants issued guidance on a one-year enforcement safe harbor, pursuant to which defendants will not take any enforcement action for failure to cover contraceptive services against an organization that qualifies for the enforcement safe harbor. HHS, Guidance on the Temporary Enforcement Safe Harbor, at 3 (Feb. 10, 2012), available at http://cciio.cms.gov/resources/files/Files2/02102012/20120210-Preventive-Services-Bulletin.pdf. Defendants also explained that, before the expiration of the enforcement safe harbor, they will propose and finalize changes to the preventive services coverage regulations to further accommodate non-profit religious organizations' religious objections to covering contraceptive services. 77 Fed. Reg. 8725, 8727-29 (Feb. 15, 2012).

Plaintiff does not allege that it is ineligible for the temporary enforcement safe harbor, and there is nothing in the Complaint to suggest that plaintiff will be unable to meet the criteria.

Accordingly, the earliest that plaintiff could be subject to any enforcement action by defendants for failing to provide contraceptive coverage is July 1, 2014. *See* Compl. ¶ 30. With such a long time gap before the inception of any possible injury, plaintiff cannot satisfy the imminence requirement for standing. Moreover, in light of defendants' statement that they will modify the challenged regulations to address the concerns of non-profit religious organizations, like plaintiff, that object to providing contractive coverage for religious reasons, there is no reason – beyond mere speculation – to suspect that plaintiff will be required to offer a group health plan that covers contraceptive services in contravention of its alleged religious beliefs once the enforcement safe harbor expires.

Third, this case is not ripe. Plaintiff's challenge to the preventive services coverage regulations is not fit for judicial review because defendants have indicated that they will soon initiate changes to the regulations that are intended to accommodate plaintiff's religious objections to providing contraceptive coverage. In the meantime, the enforcement safe harbor will be in effect such that plaintiff, even if its group health plan is not eligible for grandfather status, will not suffer any hardship as a result of its failure to cover recommended contraceptive services.

Defendants intend to file a motion to dismiss for lack of jurisdiction raising these arguments on February 27, 2012. ~~Defendants request that the Court delay the commencement of discovery until after this motion is resolved.~~

## 3. STATEMENT OF CLAIMS AND DEFENSES

**a. Plaintiff:**

<u>Background</u>

Plaintiff Colorado Christian University's claims challenge a regulation issued by Defendants under the Patient Protection and Affordable Care Act and the Health Care and Education Reconciliation Act, both which were enacted in 2010 (collectively the "Affordable Care Act" or "Act"). In relevant part, the Act requires all group health plans and health insurance issuers to provide "preventive care" for women "without imposing any cost sharing." 42 U.S.C. § 300g-13(a)(4). "The Act does not define "preventive care." It delegates that task to the Health Resources and Services Administration ("HRSA"), a division of Defendant HHS.

On August 1, 2011, HHS implemented an "interim final rule" reiterating HRSA's authority to define "preventive care" and adding that HRSA "may establish" an exemption for "religious employers" from "any requirement to cover contraceptive services." The regulation specifies, however, that to be a "religious employer," an organization must meet the following criteria:

(1) The inculcation of religious values is the purpose of the organization;

(2) The organization primarily employs persons who share the religious tenets of the organization;

(3) The organization serves primarily persons who share the religious tenets of the organization;

(4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

45 C.F.R. § 147.130(a)(iv)(A)-(B).[1] The University does not satisfy these requirements and thus would not be exempt from any requirement to provide contraception coverage as preventive care.

Also on August 1, 2011, HRSA adopted guidelines proposed by a private health policy organization—the Institute of Medicine ("IOM")—that, in fact, do define "preventive care" to include "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." *See* Women's Preventive Services: Required Health Plan Coverage Guidelines, www.hrsa.gov/ womensguidelines/ (last visited Feb. 14, 2012).

FDA-approved contraceptive methods include Plan B, also known as the "morning-after pill," and ulipristal, also known as "ella" or the "week-after pill."[2] The University cannot provide insurance coverage for such products or related services without violating its deeply held religious convictions concerning the sanctity of human life. But under the Affordable Care Act, the only way the University could avoid providing this coverage would be to drop its insurance altogether, in which instance the government would fine it one half million dollars the first year and increasing amounts in each year after. Thus, the mandate threatens severe financial penalties to coerce the University to violate its deeply held religious convictions.

On February 15, 2012, Defendants issued a final regulation stating that the earlier "interim final rule" was being implemented "without change." Although Defendants also made

---

[1] Defendants Department of Labor and Department of Treasury have issued essentially identical regulations, affirming HRSA's authority to identify appropriate "preventive care" and providing the same guidance as the HHS regulation. *See* 26 C.F.R. § 54.9815-2713T; 29 C.F.R. §2590.715-2713.

[2] *See* http://www.fda.gov/forconsumers/byaudience/forwomen/ucm118465.htm#emerg (last visited February 11, 2012) (describing various FDA-approved contraceptives, including the "emergency contraceptives" Plan B and ella).

statements indicating that they would consider further rulemaking to create additional exemptions for religious organizations, the final governing regulation does not exempt the University.

Claims

The contraceptive mandate violates the Religious Freedom Restoration Act ("RFRA"); the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the United States Constitution; and the Administrative Procedure Act.

RFRA prohibits the federal government from imposing a substantial burden on a person's free exercise of religion unless it satisfies strict scrutiny, meaning that imposing the burden on the person must be the least restrictive means of advancing a compelling government interest. *Gonzales* v. *O Centro Espirito Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). The University's adherence to its Christian beliefs that prohibit taking action—or facilitating others in taking action—that may terminate a human life from the moment of conception qualifies as "religious exercise" within the meaning of RFRA. The contraceptive mandate places a substantial burden on this religious exercise by imposing a severe financial penalty and barring the University from providing any health insurance if it engages in the religious exercise. This infringement on free exercise cannot satisfy strict scrutiny. The government's interest in marginally increasing access to contraceptives is not a ***compelling*** government interest, and even if it were, forcing religious institutions to provide the additional access is not the least restrictive means for advancing that interest. Among numerous other options, the government could directly provide increased access to contraceptives.

Under the Free Exercise Clause, a law that burdens a particular religious practice is prohibited unless the law is "neutral and generally applicable" or strict scrutiny is satisfied.

*Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah,* 508 U.S. 520 (1993). The

contraceptive mandate is not neutral for two reasons. It discriminates on its face between

religions by exempting the narrow class of religious organizations that qualify as "religious

employers" and it was enacted with discriminatory intent. The contraceptive mandate also is not

generally applicable for two reasons. It is riddled with categorical exclusions, excusing—for

example—compliance by small businesses and "grandfathered" plans, and it also gives the

government broad discretion to grant individualized exemptions on a case-by-case basis. And,

for the same reasons previously stated, the mandate cannot survive strict scrutiny.

Under the Establishment Clause, the government is prohibited from preferring some religions

to others. The contraceptive mandate violates this principle by protecting the religious liberties

of some religious organizations—those that meet the narrow definition of "religious

employer"—but denying the same protection to religious organizations that do not meet the

definition. The mandate further violates the Establishment Clause because the investigation

necessary to determine whether a particular religious organization meets the definition of

"religious employer" would significantly entangle the government in religious affairs. And, for

the same reasons previously stated, the mandate cannot satisfy strict scrutiny.

Under the Free Speech Clause, the government cannot force private speakers to convey the

government's preferred message with which the speaker disagrees. The contraceptive mandate's

requirement that the University pay for and sponsor speech about drugs that cause abortions

violates this principle. And, again, the mandate cannot satisfy strict scrutiny.

Finally, the contraceptive mandate violates the Administrative Procedure Act for several

reasons. It was enacted without consideration of cost effectiveness or the voluminous comments

received in opposition to the mandate. It was enacted in an arbitrary and capricious manner in

that the decision to discriminate among religious organizations runs counter to the evidence submitted during the comment period, as well as to well-established law. Also, by requiring coverage of drugs that cause abortion, the mandate violates the Administrative Care Act, which expressly prohibits requiring "a qualified health plan to provide coverage of [abortion] services," and the Weldon Amendment, which provides that certain appropriated funds may not be made available to any federal agency or program that "subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."

~~The University reserves the right to supplement its claims and theories as additional information becomes available in the course of this litigation.~~

As for relief on its claims, the University seeks a declaratory judgment that the mandate violates the Religious Freedom Restoration Act, the First Amendment to the United States Constitution, and the Administrative Procedure Act. The University further seeks a permanent injunction prohibiting Defendants from enforcing the contraceptive mandate, as well as its costs and attorneys fees, plus such other relief as the Court deems equitable and just.

**b.  Defendants:**

The Court lacks jurisdiction over this case for the reasons stated above (*see supra*, pp. 2-4).

The preventive services coverage regulations do not violate the Religious Freedom Restoration Act. The regulations do not impose a substantial burden on plaintiff's religious exercise and, even if they did, they are narrowly tailored to serve compelling governmental interests.

The preventive services coverage regulations do not violate the First Amendment to the United States Constitution. The regulations do not violate the Free Exercise Clause because they

are neutral and generally applicable. The regulations do not violate the Establishment Clause because they do not discriminate among religions; nor do the regulations significantly entangle the government in religious affairs. The regulations do not violate the Free Speech Clause because they do not require plaintiff to say anything or prohibit plaintiff from expressing its views.

The preventive services coverage regulations do not violate the Administrative Procedure Act ("APA"). Defendants complied with the procedural requirements of the APA, and the regulations are not arbitrary, capricious, or contrary to law.

~~Defendants reserve the right to raise other defenses not asserted here that become apparent throughout the course of this proceeding.~~

**c.  Others:**

Not applicable.

## 4.  UNDISPUTED FACTS

The parties have not reached agreement as to undisputed facts at this junction. ~~The parties have separately proposed the following facts as potentially undisputed:~~

~~Plaintiff:~~

~~(1)   The University is an inter-denominational Christian liberal arts university.[3]~~

~~(2)   Faith is central to the University's educational mission.[4]~~

~~(3) The University describes itself as a "Christ-centered community" and commits, in its mission, to "exemplary academics, spiritual formation, and engagement with the world."[5]~~

---

[3]  *See* http://www.ccu.edu/welcome/webelieve.asp (last visited Feb. 14, 2012)

[4]  *See* http://www.ccu.edu/welcome/ (last visited Feb. 14, 2012); *see also* http://www.ccu.edu/strategicobjectives/default.asp (last visited Feb. 14, 2012).

[5]  *See* http://www.ccu.edu/welcome/mission.asp (last visited Feb. 14, 2012).

(4) ~~All University employees profess the same Statement of Faith, which establishes the essential framework of Christian principles they share.~~[6]

(5) ~~One of the University's strategic objectives is to "[i]mpact our culture in support of traditional family values, **sanctity of life**, compassion for the poor, Biblical view of human nature, limited government, personal freedom, free markets, natural law, original intent of the Constitution and Western civilization."~~[7]

(6) ~~The University considers preventing the implantation of a human embryo by artificial means to be an abortion.~~

(7) ~~The University believes that the drugs Plan B and *ella* can prevent the implantation of a human embryo in the wall of the uterus, thereby causing the death of the embryo.~~

(8) ~~There is scientific consensus that the drug *ella* can prevent the implantation of a human embryo in the wall of the uterus, thereby causing the death of the embryo.~~

(9) ~~On August 3, 2011, Defendants published an "interim final rule" that requires "all group health plans and health insurance issuers to provide "preventive care" for women "without imposing any cost sharing."~~

(10) ~~The "interim final rule" was made effective on August 1, 2011.~~

(11) ~~The "interim final rule" states that HRSA "may establish" an exemption for "religious employers" from "any requirement to cover contraceptive services."~~

(12) ~~The "interim final rule" defines "religious employer" as an organization that meets the following four criteria:~~

---

[6] *See* http://www.ccu.edu/welcome/webelieve.asp (last visited Feb. 14, 2012); http://www.ccu.edu/welcome/difference.asp (last visited Feb. 14, 2012 (stating that the Statement of Faith is "embraced by all faculty and staff").

[7] *See* http://www.ccu.edu/strategicobjectives/default.asp (last visited Feb. 12, 2012) (emphasis added).

(a) The inculcation of religious values is the purpose of the organization;

(b) The organization primarily employs persons who share the religious tenets of the organization;

(c) The organization serves primarily persons who share the religious tenets of the organization;

(d) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

(5) The University is not an organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

(6) On February 15, 2011, Defendants published a "final rule" stating that the "interim final rule" was being made final "without change."

Defendants:

(1) On July 19, 2010, defendants published interim final regulations implementing 42 U.S.C. § 300gg-13.

(2) Defendants amended the interim final regulations on August 1, 2011.

(3) On February 10, 2012, defendants finalized the amendment to the interim final regulations.

(4) On February 10, 2012, defendants issued guidance entitled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the Requirement to Cover Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code."

## 5.  COMPUTATION OF DAMAGES

The University is not seeking an award of compensatory damages at this time.

## 6.  REPORT OF PRECONFERENCE DISCOVERY
## AND MEETING UNDER FED. R. CIV. PL. 26(f)

a.  **Date of Rule 26(f) meeting**:

February 15, 2012.

b.  **Names of each participant and party he/she represented:**

Eric Baxter as counsel for the University.

Michelle Bennett as counsel for Defendants.

c.  **Statement as to when Rule 26(a)(1) disclosures were made or will be made**;

Rule 26(a)(1) disclosures will be made on February 22, 2012.

d.  **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ.**

**P. 26(a)(1):**

None.

e.  **Statement concerning any agreements to conduct informal discovery:**

Defendants will produce without further request the administrative record pertaining to the

challenged regulations as well as the February 10, 2012 guidance regarding the temporary

enforcement safe harbor.

Defendants note that the administrative record is being provided pursuant to the requirements

of the Administrative Procedure Act, not the Federal Rules of Civil Procedure governing

discovery. Defendants anticipate it will take approximately 90 days to compile the administrative

record.

The University notes that Rule 17(a) of the Federal Rules of Appellate Procedure establishes

that 40 days is a reasonable time for compiling an administrative record.

The parties have not agreed to any informal discovery.

f.  **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

If any issue in this matter proceeds to trial, the parties agree to use a unified exhibit numbering system.

g.  **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

Plaintiff:

The University anticipates that Defendants and third parties have electronically stored information relevant to its discriminatory intent claim under the Free Exercise Clause that may not be included in the administrative record. The University also anticipates that Defendants and third parties may have electronic information relevant to its "general applicability" claim under the Free Exercise Clause that may not be included in the administrative record. The University also anticipates that Defendants and third parties may have electronic information relevant to their "compelling government interest" and "narrowly tailored" defenses.

Defendants:

Defendants do not anticipate seeking any electronically stored information from plaintiff. Defendants further object to plaintiff's request for electronically stored information. The electronically stored information plaintiff seeks, if any such information exists, is not relevant to plaintiff's constitutional claims, which are purely legal and should be decided based solely on the administrative record. Moreover, any electronically stored information is likely privileged

and the burden and expense of producing any such information outweighs any benefit of the information.

h. **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties have discussed the possibility for promptly settling or resolving the case and agree that a settlement is unlikely.

## 7.  CONSENT

The parties have not consented to the exercise of jurisdiction by a magistrate judge.

## 8.  DISCOVERY LIMITATIONS

a.  **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.  Each side may take no more than ten depositions.  Each side may serve no more than 25 interrogatories, including discrete subparts.  ~~None.~~**

b.  **Limitations which any party proposes on the length of depositions.  No deposition may exceed one day of seven hours.  ~~None.~~**

c.  **Limitations which any party proposes on the number of requests for production and/or requests for admission.  Each side may serve no more than 40 requests for production and 25 requests for admissions.  ~~None.~~**

d.  **Other Planning or Discovery Orders.**

The parties anticipate that the Court will need to resolve disputes over whether high-level officials within the defendant agencies can be required to appear for deposition. The parties also anticipate that the Court will need to resolve disputes over production of documents not included by defendants in the administrative record.

The University requests that Defendants be ordered to produce the administrative record within forty days after the Rule 16(b) conference scheduled for February 29, 2012, as would be required by the Federal Rules of Appellate Procedure in cases triggering direct appellate review of agency action. *See* Fed. R. App. P. 17(a).

Defendants request that they be given at least 90 days to compile and produce the administrative record (i.e., no earlier than May 30, 2012). This amount of time is necessary because the administrative record will be voluminous (including over 200,000 public comments) and will require coordination with three different federal agencies. Providing defendants with 90 days to produce the administrative record will not burden plaintiff because many of the public comments and other information that will be contained in the administrative record are available on the Internet. *See, e.g.*, http://www.regulations.gov/#!documentDetail;D=HHS-OS-2011-0023-0002 (click on docket number then check box labeled public submission); http://www.regulations.gov/#!documentDetail;D=IRS-2010-0017-0038 (same instructions); http://www.dol.gov/ebsa/regs/cmt-1210-AB44a-1.html. Defendants also note that this case is not governed by the Federal Rules of Appellate Procedure and thus any deadline included therein is inapplicable.

**The administrative record shall be provided within 90 days of February 29, 2012.**

The parties anticipate that the Court may need to resolve a dispute over whether adjudication of plaintiff's constitutional claims and Administrative Procedure Act claims should be limited to review of the administrative record.

## 9. CASE PLAN AND SCHEDULE

**a. Deadline for Joinder of Parties and Amendment of Pleadings:**

March 30, 2012

b. **Discovery Cut-off: October 31, 2012**

~~Plaintiff:  July 20, 2012 (all discovery to be served in time for responses by this date)~~

~~Defendants:  November 30, 2012 (all discovery to be served in time for responses by this date)~~

c. **Dispositive Motion Deadline: November 30, 2012**

~~Plaintiff:  August 31, 2012~~

~~Defendants:  January 30, 2013~~

d. **Expert Witness Disclosure**

1. **The parties shall identify anticipated fields of expert testimony, if any**.

   **There will be no expert witnesses.**  ~~The parties do not currently anticipate calling any expert witnesses.~~

2. ~~**Limitations which the parties propose on the use or number of expert witnesses**.~~
   ~~Not applicable.~~

3. ~~**The parties shall designate all experts and provide opposing counsel and any *pro se* parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before [date].**~~
   ~~Not applicable.~~

4. ~~**The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before [date].**~~
   Not applicable.

e. **Identification of Persons to Be Deposed:**

   **Plaintiff:**

The University anticipates deposing Defendant Secretary Sebelius and potentially other Defendant Secretaries and officials within the Defendant Agencies. The University also anticipates third-party depositions, including of members of the IOM and the Committee on Preventive Services for Women and their staff.

**Defendants:**

As noted above, defendants intend to file a motion to dismiss for lack of jurisdiction. Defendants maintain that this motion should be resolved before any discovery commences. Defendants further assert that discovery on plaintiff's Administrative Procedure Act claims and constitutional claims, which are purely legal, is not appropriate.

If the Court denies defendants' motion to dismiss for lack of jurisdiction or the Court does not stay discovery pending a ruling on this motion, defendants may depose plaintiff as well as plaintiff's officers, directors, employees, and students, with respect to plaintiff's Religious Freedom Restoration Act claim. Defendants reserve the right to depose others not identified here to the extent that discovery reveals other relevant sources of evidence.

f. **Deadline for Interrogatories**: **All written discovery must be served so that responses are due on or before the discovery cut-off.**

~~Plaintiff:  June 20, 2012~~

~~Defendants:  October 30, 2012~~

g.   **Deadline for Requests for Production of Documents and/or Admissions**:  **All written discovery must be served so that responses are due on or before the discovery cut-off.**

~~Plaintiff:  June 20, 2012~~

~~Defendants: October 30, 2012~~

## 10.  DATES FOR FURTHER CONFERENCES

**[For completion by the Magistrate Judge]**

a.   An early neutral evaluation **may be set on the motion of the parties.** ~~will be held on~~

~~_____ at _____ o'clock __M.~~

~~( )~~      ~~_Pro se_ parties and attorneys only need to be present.~~

~~( )~~      ~~_Pro se_ parties, attorneys, and client representatives must be present.~~

~~( )~~      ~~Each party shall submit a Confidential Statement to the magistrate judge on or before _____ outlining the facts and issues, as well as the strengths and weaknesses of their case.~~

~~b.   Status conferences will be held in this case at the following dates and times:~~

c.   A final pretrial conference will be held in this case on **January 17, 2013, at 10:00 a.m.** A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than **January 10, 2013** ~~seven (7) days before the final pretrial conference.~~

## 11.  OTHER SCHEDULING MATTERS

**a.   Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement**.

The scheduling and discovery issues on which the parties have been unable to reach agreement are set forth in the preceding sections. The University notes that its proposed discovery deadlines are subject to timely production of the administrative record.

**b. Anticipated length of trial and whether trial is to the court or jury**.

Plaintiff:

The University maintains that, following discovery, there will be no genuine disputes of material fact for trial. ~~Nevertheless, if a trial is necessary, the case would be tried to the court. Then University anticipates that any trial would last no more than three days.~~ **The plaintiff anticipates seeking a jury trial.**

Defendants:

Defendants anticipate that this matter can be resolved on a motion to dismiss or motion for summary judgment. Nevertheless, if a trial is necessary ~~, the case would be tried to the court, defendants~~ **the parties** anticipate any trial would last 3 days.

**c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wasatch Street, Colorado Springs, Colorado; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado**.

The parties agree that all proceedings will be most efficiently and economically conducted in the Court's facilities in Denver.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LcivR 6.1D by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LcivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to the case.

## 13.  AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

Dated February 29, 2012.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

APPROVED:

 /s/ *Eric S. Baxter*                                    /s/ *Michelle R. Bennett*

Eric Baxter                                             Michelle R. Bennett
The Becket Fund for Religious Liberty                   U.S. Department of Justice
3000 K Street, NW, Ste. 221                             20 Massachusetts Avenue N.W.
Washington, DC 20007                                    Washington, D.C.  20530
(202) 349-7221                                          (202) 305-8902